UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA                                    PLAINTIFF

v.

AFFIDAVIT

TARAREY JAMELLE TAYLOR                                    DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Travis R. Steward, being duly sworn, do hereby depose and state:

INTRODUCTION AND AGENT BACKGROUND

1.      I am employed as a Task Force Officer (TFO) with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been such since October, 2021. I am currently assigned to the Lexington Resident Office (LRO) Enforcement Group in Lexington, Kentucky.  My current duty assignment includes, but is not limited to, investigating complex drug conspiracies, and organizations and individuals involved in the trafficking of controlled substances.  Prior to my current assignment with the DEA, I was a Police Officer for the Nicholasville Police Department for a period of approximately 6 years.  During my employment at the Nicholasville Police Department, I specifically worked narcotics investigations as a detective for approximately 1.5 years.  I am now employed by the Jessamine County Sheriff's Office and have been a narcotics detective for approximately 5 years.  I am authorized and have the responsibility to investigate persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), money laundering (18 U.S.C. § 1956 and 1957), and illegal possession of

1

weapons (18 U.S.C. §§ 922 and 924(c)(1)).  In my capacity as a DEA TFO, I am authorized to arrest persons for violations of federal law, including for those offenses listed above.

2.      This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state and local law enforcement officers during their official duties.  The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause.

3.      I have participated in drug investigations, including possession and distribution of fentanyl, marijuana, cocaine, heroin, methamphetamine, and other drugs. Through my training, education and experience, I have become familiar with the manner in which persons involved in the trafficking of controlled substances conduct their illicit activities, and their methods of operation and attempts to avoid detection from law enforcement.

Specifically:

a.  I have conducted street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

b.  I am familiar with the appearance and street names of various drugs, including, heroin, fentanyl, cocaine, cocaine base (crack cocaine), methamphetamine, marijuana and other substances;

c.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

2

d. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

e. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

f. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry; and

g. I have consulted with Special Agents and Task Force Officers who have extensive experience in this field, and they have provided me with guidance and knowledge regarding surveillance operations and drug investigations

h. I have worked in an undercover capacity in order to identify targets of investigations related to drug trafficking.

4.      The investigation to date indicates that there is probable cause to believe that on July 22nd, 2026, in Fayette County, in the Eastern District of Kentucky, Tararey Taylor knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in the Eastern District of Kentucky, in violation of 21 U.S.C. Section 841(a)(1).  The following facts support the finding of probable cause.

## PROBABLE CAUSE

5.      On July 22, 2026, your affiant applied for a state search warrant from Fayette County Kentucky District Court Judge John Tackett authorizing agents and officers to conduct a search of 224 Mousas Way, Lexington, Kentucky, a residence utilized by Tararey Jamelle Taylor, for evidence of drug trafficking. Also listed on the search warrant was the person of Taylor and

3

the following vehicles: 2015 Chevrolet Malibu with Kentucky registration W6N212 and a 2014 Ford Explorer with Kentucky registration P4S886. Judge Tackett signed the warrant that same day, authorizing the search as requested.

6.      At approximately 3:00 p.m., at Mt. Tabor Liquor located at 2901 Richmond Road, Lexington, Kentucky, agents observed Taylor traveling through the drive-up window lane in a 2015 Chevrolet Malibu with Kentucky tag W6N212. A check of a reliable law enforcement database confirmed this vehicle to be registered to Brittany McGhee at 224 Mousas Way, Lexington, Kentucky. Agents and officers activated emergency equipment affixed to their official government vehicles, announced their presence, and secured Taylor from the vehicle without incident while he was stationary at the drive-up window. Taylor was in the driver's seat and the only occupant in the vehicle. While placing Taylor into custody, agents/offices observed suspected methamphetamine scattered about the driver's seat Taylor had just occupied, as well as in the driver side floorboard. Also in plain view, agents observed a handgun, subsequently determined to be a Berretta APX .40 caliber, in the front passenger seat of the vehicle and within reach of the driver. This handgun contained a loaded magazine with a round chambered. I know, based on training and experience, that it is common for individuals engaged in large-scale drug trafficking to possess firearms to protect themselves, their drugs and their drug proceeds. A search of a reliable law enforcement database revealed that Taylor was a convicted felon and was prohibited from possessing a firearm. In both the driver and front passenger's seat, agents located freezer bags along with a "Food Saver" brand box containing additional bags. Affiant is aware this is an item frequently used to store contraband such as methamphetamine.

7.      Under the driver's seat, agents located a cellular telephone that further contained a Kentucky state driver's permit in Taylor's name. In the center console of the vehicle, agents

4

located a freezer-style bag containing approximately 183.7 gross grams of suspected methamphetamine. This contraband was separate and in addition to the other methamphetamine located in the cabin of the vehicle. Affiant is aware that this amount of methamphetamine is not consistent with personal use but rather indicative of trafficking. Based on my training and experience, this suspected controlled substance appeared to be methamphetamine and was packaged similarly to the suspected methamphetamine later located at Taylor's residence on Mousas Way. Additionally, after the search at his residence, Taylor denied possession of the 50-plus pounds of methamphetamine but admitted that he "only had a pound on him" in reference to the vehicle search.

8.     After Taylor was detained and the search of his person and Malibu were complete, members of the DEA executed the search warrant at Taylor's residence, 224 Mousas Way.  After knocking and announcing with no response, forced entry was made into the residence and the residence was secured.  A search of the residence was then conducted and located at the back of the house were 2 trash cans.  Located in one of the trash bins was approximately 51 pounds (23,133 grams gross weight) of suspected methamphetamine packaged in individual vacuum sealed food saver bags.  The suspected methamphetamine was located in a backpack and a beige bag, all within the trash receptacle.  Your affiant had observed Taylor with this exact same backpack the evening prior on July 21st, 2026, while conducting surveillance of Taylor as he was leaving the Bluegrass Extended Stay Hotel located on Richmond Road. The backpack is very distinctive with what appear to be large shark teeth as the design on the backpack.  Also located in this same trash receptacle were two digital scales.  The methamphetamine was field tested by TFO David Lewis using a reliable handheld mass-spectrometer, commonly referred to as Tru-Narc, indicating a positive alert for methamphetamine.

9.    A search of a second trash receptacle behind the residence was conducted and located inside were numerous containers of MSM horse supplement powder and empty Food Saver vacuum bags matching the bags from the other trash can that the methamphetamine was located in. Your affiant knows MSM to be a common cutting agent for methamphetamine and fentanyl. Your affiant knows through training and experience that narcotics traffickers use cutting agents to turn their original supply of narcotics into an even greater quantity. Also located in this same trash receptacle was a receipt for Clean Sweep Car Wash from this date. This was significant to your affiant due to law enforcement members following Taylor to Clean Sweep Car Wash on this date. This confirmed to your affiant that Taylor exercised control over these trash cans located at the base of the driveway of 224 Mousas Way.

10.    A further search of the residence was conducted and located in the master bedroom was a plastic bag containing suspected fentanyl, a plastic bag containing suspected crack cocaine, a DTI AR style Rifle with serial #B86115 that was loaded and chambered laying in a pile of laundry on the floor, a box of 9mm ammunition with live rounds and a large hydraulic kilo press.

11.    In conclusion, members of the DEA LRO identified Tararey Jamelle Taylor, as a significant narcotics trafficker. Members of the DEA developed probable cause to search for evidence of drug trafficking at Taylor's residence, 224 Mousas Way, his person and two vehicles associated with him. Members of the DEA seized a large quantity of suspected methamphetamine from Taylor's vehicle along with a loaded and chambered handgun. Both of these items were within arm's reach of Taylor inside of the vehicle. Members of the DEA seized a large quantity of suspected methamphetamine from a trash can behind Taylor's residence and located suspected fentanyl and crack cocaine, along with a kilo press from within Taylor's residence. Members of the DEA also located a loaded and chambered AR styled rifle that was

6

loaded and chambered from within this same bedroom that contained the narcotics and kilo press.

## CONCLUSION

12.     I believe that the facts set forth above support that there is probable cause to believe that on or about July 22, 2026, in Fayette County, in the Eastern District of Kentucky, Tararey Jamelle Taylor knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in the Eastern District of Kentucky, in violation of 21 U.S.C. Section 841(a)(1).

I declare under the penalty of perjury that the above statement is true and correct to the best of my knowledge, information, and belief.

*/s/ Travis Steward*
Travis R. Steward, Task Force Officer
Drug Enforcement Administration

Affiant attested by reliable electronic means (telephone) per FRCrP 4.1 on this 23rd day of July, 2026.

MATTHEW A. STINNETT
U.S. MAGISTRATE JUDGE

7